UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 19-20264-CIV-GOODMAN
[CONSENT CASE]


ERIC EWING,

      Plaintiff,

v.

CARNIVAL CORPORATION,

      Defendant.

_____/

### ORDER ON PLAINTIFF'S MOTION TO "HALT THE MADNESS"

Plaintiff filed [ECF No. 283] a motion he calls one to "Halt the Madness." Defendant Carnival Corporation filed a response and Plaintiff filed a reply. [ECF Nos. 291; 301]. The Undersigned held a one and a half hour hearing. [ECF No. 306].

The Undersigned **grants in part** and **denies in part** the motion.

Carnival may not introduce at trial as an exhibit or use at trial as a demonstrative aid either the two videos of a petite female room steward jimmying open the bunkbed with a knife or the standard cutlery set delivered to passenger cabins as part of a room service order.

However, Carnival may at trial use as a demonstrative aid (but not as an exhibit admitted into evidence) the actual pullman bunkbed from Cabin R298, in which Plaintiff was staying when the bunk bed allegedly fell on his head.

If Carnival wants to use the bunk bed as a demonstrative aid, then it shall remove it on October 18, 2022 (the day it advised the Court and opposing counsel) when the ship is in port in Miami.  Carnival shall provide Plaintiff's counsel and his expert witness the ability to observe the removal of the bunk bed. As explained by Carnival's counsel at the hearing, its expert witness, Commander Emond, will be the custodian of the bunk bed after it is removed and shall make sure that it remains intact and in unchanged condition between the time of its removal and its use in Court during the trial.

Although the parties and their witnesses may *observe* the bunk bed's removal from the ship's cabin, they may not take measurements or conduct tests or studies.  They may, if they wish, take photographs or videos of the process (in case there are any issues about the removal process).

At trial, the witnesses (both fact and expert) may use the bunk bed to illustrate their testimony.  They may, for example, demonstrate how the bunk is stowed and locked and how it is pulled down.  They may also show how the bunk bed would *not* be secured if it were not locked and how it would actually be unlocked, even if the lock were engaged, if the bunk bed had not been pushed back far enough into its storage compartment.

The witnesses could also use the bunk bed to show the gap between the top of the bed and the frame.

What the witnesses **cannot** unilaterally do without leave of Court, however, is to

try to demonstrate with a knife, screwdriver or other tool how the lock could be jimmied open after it was properly locked.  If either party seeks to have a witness demonstrate any vandalism, jimmying, prying or other vandalism-type manipulation of the lock (such as forcing it open with a knife), then the party must first obtain specific permission from the Court.

Given that the actual bed and *actual* locking mechanism will be in Court as a demonstrative aid[1] should Carnival follow through on its request to use the bunk bed at trial, the parties may no longer need Commander Emond's demonstrative aid, which is a *simulation* of the lock.  But that decision (as well as decisions on whether to take the deposition of Dr. Kadiyala, whether to have Commander Emond issue a supplemental report and whether to take Commander Emond's deposition) remains with the parties. This Order neither requires nor prohibits those activities.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on October 11, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

---

[1]    Because the bunk bed will be a demonstrative aid and not actually introduced into evidence, there are no viable concerns about what jurors might do to or with the bunk bed during deliberations.  Thus, there is no risk that a juror might, for instance, pull out a key or pocket knife and try to pry open the tamper-resistant lock during deliberations.