UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 19-20264-CIV-GOODMAN
[CONSENT CASE]

ERIC EWING,

    Plaintiff,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**CORRECTED ORDER ON PLAINTIFF'S EMERGENCY MOTION FOR
LEAVE TO PRESERVE TESTIMONY OF EXPERT UNAVAILABLE FOR TRIAL**

The Undersigned denies Plaintiff's emergency motion because (1) it does not demonstrate good cause or excusable neglect to alter the long-scheduled trial scheduling order and (2) the motion presents the critical facts in a strategically vague manner which some might describe as misleading.

Factual and Procedural Background

Slightly more than two weeks before a specially set trial is scheduled to begin, Plaintiff Eric Ewing filed his Emergency Motion for Leave to Preserve Testimony of Expert Unavailable for Trial. [ECF No. 320]. The motion concerns Dr. Andrew Walker, Plaintiff's so-called "hybrid expert" on Neuroradiology. Dr. Walker testified at the first

trial (in October 2021), which resulted in a defense verdict. The Court later granted Plaintiff's motion for a new trial.

On May 31, 2022, the Court issued an Order scheduling a trial scheduling conference for June 2, 2022 and advised in writing that counsel should "have their calendars available so that the Court can pinpoint a special set trial date workable to all counsel and the Court." [ECF No. 273]. At the June 2, 2022 trial scheduling conference, the Court, in consultation with counsel, selected November 7, 2022 as the first day of a special-set, nine-day jury trial. All counsel agreed that this date was acceptable. So the trial date was not unilaterally or arbitrarily set. Instead, it was scheduled *by consensus*. At the hearing, one of Plaintiff's attorneys advised that she "cannot assure [the Court] 100 percent whether our experts will be available" because they had not "check[ed] with our experts for November" -- but then advised that "it does look clear on our end." [ECF No. 280, p. 14].

Nevertheless, in an abundance of caution, the Court provided a safety valve in the Trial Scheduling Order [ECF No. 275], which was filed on June 6, 2022. Specifically, on page 1, footnote 1, the Court advised that "[i]f any of the deadlines are problematic, then the parties may, by September 1, 2022, file a motion to modify, after consulting with opposing counsel." *Id.*

No such motion was filed, and the parties began gearing up once again for trial, filing myriad motions. Finally, on October 20, 2022, Plaintiff filed this "emergency"

motion. The motion represents that Dr. Walker would be unavailable for the November 7, 2022 trial (which the Court scheduled by agreement with counsel) even though Plaintiff's counsel knew of that trial date on June 2, 2022 (more than four and a half months earlier[1]).

In the emergency October 20, 2022 motion, Plaintiff's counsel made the following representations:

> 1. Plaintiff **has been in communication** with Plaintiff's experts in order to coordinate appearance at the upcoming re-trial of this matter set to commence November 7, 2022. (emphasis added).
>
> 2. Plaintiff **confirmed** availability of his experts in advance of the June 2, 2022, Scheduling Conference. At that time Dr. Andrew Walker, Plaintiff's hybrid expert on Neuroradiology, had **advised Plaintiff of certain unavailability that did not include the current trial setting.** (emphasis supplied).
>
> 3. Dr. Walker has recently retired from his profession as of August 30, 2022. **As a result of his retirement, his availability has since changed.** (emphasis added).
>
> 4. On October 13th, **once Plaintiff was made aware** of Dr. Walker's unavailability, Plaintiff contacted Defendant, advised that Dr. Walker is unable to attend the trial, and offered four dates, October 28th and November 1st, 3rd, and 4th, in order to accomplish Dr. Walker's video deposition to preserve his testimony for use at trial.
>
> 6. Today, Plaintiff further advised CARNIVAL of the above circumstances regarding Dr. Walker's recent retirement and that he will be in Hawaii and unable to attend. **Until today, Plaintiff was unaware that Dr. Walker would be in Hawaii** during the dates of this trial, namely from November 5th through December 13th." (emphasis added).

---

[1]   The initial version of this Order said "later," not "earlier." [ECF No. 330].

> Although Defendant Carnival took Dr. Walker's deposition on December 4, 2019 and although Dr. Walker also testified in person at the trial, Plaintiff's motion contends that his prior testimony is "not in a form that can be used for the upcoming trial as Dr. Walker is required to present his visual aids and high-resolution demonstratives while he testifies."

Defendant Carnival objects to the motion. [ECF No. 320].

Before Carnival filed its written opposition, the Court ordered Plaintiff to submit a declaration in order to provide clarification about some factual issues which the Undersigned deemed in need of more-precise detail. Plaintiff's counsel filed the required declaration. [ECF No. 327].

The declaration revealed the following:

a. Although Plaintiff's counsel spoke with Dr. Walker on or about May 13, 2022 about trial availability for September and October of 2022, they never discussed his availability to appear at trial in *November* 2022.

b. As a result, Dr. Walker provided conflict dates for June and August through mid-October 2022, but never discussed conflicts for November 2022.

c. Apparently, Plaintiff's counsel **never advised Dr. Walker about the November 7, 2022 start of the retrial until October 4, 2022**, when he first learned of the doctor's unavailability for November 2022.

d. The declaration does not explain why Plaintiff's counsel did not immediately advise Dr. Walker of the new November trial date once they learned about it

4

on June 2, 2022 or why they waited until October 4, 2022 to first discuss the November 2022 trial date with him.

e. On October 13, 2022, Plaintiff's counsel confirmed with Dr. Walker the dates he would be able to provide a videotaped deposition to preserve his testimony (i.e., October 28, November 1, November 3, and November 4, 2022). Plaintiff's counsel then asked defense counsel to agree to one of those dates.

f. The declaration does not explain why Plaintiff's counsel waited from October 4 to October 13 to obtain dates for Dr. Walker's videotaped deposition.

g. Plaintiff's counsel telephoned Dr. Walker on October 20, 2022 and learned for the first time that he had retired and was flying to Hawaii several days before the trial and would remain there for approximately five months.

h. The declaration does not say when Dr. Walker decided to retire, when he decided to travel to Hawaii for up to five months or whether Plaintiff's counsel could have obtained that information far earlier if he had contacted the doctor any time on or after June 2, 2022.

i. The declaration did not directly answer the Court's question (i.e., "Is Plaintiff arguing that he has established excusable neglect, and, if so, what is the excusable neglect and how has it been established?"). Instead, Plaintiff's counsel said "[t]he above demonstrates efforts, repeated efforts to inquiry

5

[sic], plan and coordinate the video depo of Dr. Walker for use at trial."

In its response [ECF No. 328], Carnival attached an October 20, 2022 email from one of Plaintiff's attorneys [ECF No. 328-1]. In trying to persuade Carnival to agree to a *de bene esse* deposition[2] after the discovery deadline lapsed, counsel advised that "we **checked on his availability before the scheduling conference** in this case. However, his plans have since changed." (emphasis supplied).

Getting Into the Weeds to Find the Nitty-Gritty of What's Going On

Let's take a deep dive into the facts to learn the circumstances surrounding the emergency motion.[3]

First, it's clear that Plaintiff's counsel should have immediately contacted Dr. Walker after the June 2, 2022 hearing to determine whether he would be available during a 9-day trial beginning November 7, 2022. They did not. In fact, they did not even notify him of the November trial date until October 4, 2022.

Plaintiff's counsel must have been shocked and distressed upon learning of the doctor's unavailability, and they decided their strategy would be to videotape the doctor's testimony before trial in a trial preservation-type deposition sometimes called

---

[2]   A *de bene esse* deposition is one taken for use at trial. *Chrysler Int'l Corp. v. Chemaly*, 280 F.3d 1358, 1362 (11th Cir. 2002).

[3]   Southern District of Florida Local Rule 7.1(a)(1) requires that every motion, with some inapplicable exceptions, must "incorporate a memorandum of law citing supporting authorities." Plaintiff's motion did not include a memorandum, nor did it cite any legal authorities.

(often by older attorneys) a *de bene esse* deposition (even though that term does not appear in Federal Rule of Civil Procedure 30 (entitled, "Depositions by Oral Examination") or Rule 32 (entitled, "Using Deposition in Court Proceedings").

Apparently, Plaintiff's counsel decided they would have a better chance of persuading defense counsel (and, if necessary, this Court) to permit a video deposition of Dr. Walker if they made it appear as though they confirmed his availability before the June 2, 2022 scheduling conference but learned only recently of his scheduling conflict. So they phrased their October 20, 2022 email in a way which **made it seem** as though they confirmed his November 2022 availability before June 2, 2022. Specifically, the email advised that "we checked on his availability before the scheduling conference" but that "his plans have since changed."

Any logical reader would conclude that counsel's email implicitly and logically represented a conversation or communication before June 2, 2022 in which Dr. Walker confirmed his trial witness availability for a trial beginning in Miami on November 7, 2022. But that logical interpretation would be incorrect -- because we now know that counsel never raised the possibility of a November 2022 retrial with Dr. Walker when they spoke with him on or shortly before June 2, 2022.

Thus, while the statement "we checked on his availability before the scheduling conference" is correct in a hyper-technical way, the inherent message (i.e., we thought in late May or early June that Dr. Walker could appear as a live witness during a November

7

2022 trial in Miami) is incorrect. [Apparently, counsel forgot about her statement, made months earlier during the trial scheduling conference, that they had not "check[ed] with [their] experts for November."].

The October 20, 2022 email to defense counsel contained another significant misstatement.

After advising that they had "checked on his availability," counsel then advised that "his plans have changed." But Plaintiff's counsel did not know of his plans for November 2022 (or if they had changed) because they never knew his November 2022 plans. And they never knew his November 2022 plans because they **had not spoken with him about them** before the June 2, 2022 Trial Scheduling Hearing or in the four and a half months since then).

In fact, it could well be that Dr. Walker's plans *never* changed from June 2, 2022. Maybe he knew then that he would be retiring and would be taking an extended trip (to Hawaii or someplace else) starting in November. So, it's far-more accurate to say that what changed was Plaintiff's counsel's blind assumptions about his availability.

In any event, having decided to portray their knowledge of Dr. Walker's schedule in a misleading way in an email, Plaintiff's counsel continued that approach in their emergency motion. Once again, the presentation is one seemingly designed to be technically correct but actually misleading. Here's how:

The motion begins by noting that counsel have "been in communication with

8

Plaintiff's experts in order to coordinate appearance at the upcoming re-trial." This makes it seem as though counsel have been especially diligent in working with Dr. Walker and his schedule.

The motion then represents that counsel "confirmed availability of [their] experts in advance of the June 2, 2022 Scheduling Conference." It immediately thereafter represents that Dr. Walker "at that time" (meaning before June 2, 2022) advised Plaintiff's counsel "of certain unavailability that did not include the current trial setting."

These awkwardly-worded representations seem designed to present the incorrect narrative that counsel confirmed that Dr. Walker would be available for a November 7, 2022 trial and that counsel was somehow sandbagged by the recent news of his unavailability because Dr. Walker's previous notice of scheduling conflicts "did not include the current trial setting."

Of course, there is a logical and practical reason why Dr. Walker's notice (before June 2, 2022) to Plaintiff's counsel did not include a November 2022 scheduling conflict: Plaintiff's counsel never spoke with him about a November trial, so there would have been no reason for the doctor to check his calendar and provide confirmation or news of a conflict.

But that's not what the motion says. Instead, the motion is drafted in a way which not only conceals these important facts but also is drafted to cause the reader to reach a different, albeit factually incorrect, view of how and why Plaintiff's counsel learned of

9

Dr. Walker's unavailability for a November 7, 2022 trial.

Similar to the October 20, 2022 email, the motion contends that Dr. Walker's availability has "changed" because of "his retirement." But Plaintiff's counsel has not presented any evidence to establish that the doctor's schedule changed. All that has been presented is a change in Plaintiff's counsel's lack of knowledge about his November 2022 availability. For all we know, Dr. Walker could have planned his retirement and November extended trip many months ago.

<u>Applicable Legal Standards and Analysis</u>

"A party seeking the extension of an already-expired scheduling order deadline must show both good cause and excusable neglect." *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 943-44 (11th Cir. 2015) (emphasis in original) (citing Fed. R. Civ. P. 6(b)(1) and 16(b)(4)). Rule 16's "good cause" standard "precludes modification [of the scheduling order] unless the schedule cannot be met despite the diligence of the party seeking the extension." *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1232 (11th Cir. 2008) (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1418 (11th Cir. 1998)); *see also Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) ("The primary measure of Rule 16's 'good' cause standard is the moving party's diligence in attempting to meet the case management order's requirements. . . . Another relevant consideration is possible prejudice to the party opposing the modification."); *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992) ("If [a] party was not diligent, the [good cause] inquiry

should end.").

When determining whether excusable neglect exists, courts should consider "all pertinent circumstances, including the danger of prejudice to the non-movant, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Harris Corp. v. Ruckus Wireless, Inc.*, No. 6:11-CV-618-ORL-41, 2015 WL 3883948, at *6 (M.D. Fla. June 24, 2015); *Payne*, 606 F. App'x at 943-44.

Courts recognize that **both** good cause and excusable neglect must be present when a party seeks to extend an already-expired scheduling order. *See Payne*, 606 F. App'x at 943-44; *see also Leibel v. NCL (Bahamas) LTD.*, 185 F. Supp. 3d 1354, 1356 (S.D. Fla. 2016) (denying the plaintiff's motion to substitute expert witness and using Rule 16 analysis). Such a rigorous standard is necessary, as court deadlines are neither "aspirational nor advisory." *Roberson v. BancorpSouth Bank, Inc.*, No. 12-0669, 2013 WL 4870839, at *1 (S.D. Ala. Sept. 12, 2013).

When it is clear a party failed to act diligently, the inquiry into good cause ends there. *See Oravec*, 527 F. 3d at 1232.

"Parties who make the tactical decision not to preserve deposition testimony during the discovery phase take the risk that the testimony will not be presented if the witness is unable or unwilling to appear at trial." *Kallas v. Carnival Corp.*, No. 06-20115, 2009 WL 10668180, at *4 (S.D. Fla. Jun. 12, 2009) (citing *Energex Enters., Inc. v. Shughart*,

11

No. CIV-04-1367, 2006 WL 2401245, at *7 (D. Ariz. Aug. 17, 2006)); *see also Smith v. Royal Caribbean Cruises, Ltd.*, 302 F.R.D. 668, 692 (S.D. Fla. 2014) (granting defense motion for a protective order to preclude untimely depositions for trial preservation purposes and holding that "permitting parties as a matter of course to take depositions after the close of discovery would undermine the Court's ability to manage its docket"); *Radke v. NCL (Bahamas) Ltd.*, No. 19-cv-23915, 2021 WL 827008, at *2-3 (S.D. Fla. Mar. 4, 2021) (denying motion for leave to take deposition outside of discovery period for preservation purposes); *cf. Chrysler Intern. Corp. v. Chemaly*, 280 F.3d 1358, 1361 (11th Cir. 2002) (holding trial court did not abuse its discretion in granting defense motion for a protective order to prevent deposition scheduled outside the discovery deadline).

Plaintiff's counsel took the position, in communications with defense counsel which were submitted as exhibits to the emergency motion, that the requested deposition is not a discovery deposition, but, instead, is a testimony-preservation deposition. But the Federal Rules of Civil Procedure discuss only "depositions" and do not expressly discuss any purported distinction between the discovery or preservation types of depositions. Likewise, the trial scheduling orders impose a deadline for fact discovery and expert witness discovery, including depositions. There is no special deadline for a "preservation" type of expert deposition.

Plaintiff's counsel should have **immediately** contacted his experts (including Dr. Walker) after the June 2, 2022 scheduling hearing and determined if a scheduling conflict

for the November 7, 2022 trial exists. What he should not have done, however, was to do nothing for more than four and a half months and then learn shortly before trial that his expert is unavailable. That is not excusable neglect.

Moreover, it is difficult for Plaintiff to establish good cause when his motion tried to disguise the actual chronology by being drafted in a way which incorrectly suggests that counsel had timely locked down the date (but that *Dr. Walker* had somehow changed his mind and failed to follow through on an agreement to appear at trial).

Had Plaintiff's counsel not been required to provide additional specific facts surrounding the timeline, the Undersigned would have been left with a wrong impression (i.e., that counsel had "communicated" with Dr. Walker before the June 2 hearing and confirmed the November trial date).

Courts encountering this type of tactic do not look upon it favorably. In *Baker v. Nw. Mut. Life Ins. Co.*, No. CV-21-00064-TUC-JGZ, 2022 WL 4612536, at *1 (D. Ariz. Sept. 30, 2022), the court dismissed the plaintiff's cases, in part, because it was

> concerned with [the] [p]laintiffs' counsel's candor and diligence in this matter because the Memorandum for Good Cause contains misrepresentations about the status of [the] [p]laintiffs' compliance with the July 15 [o]rder. [The] [p]laintiffs' counsel stated that portions of the [j]oint [r]eport had been sent to defense counsel. In fact, [the] [p]laintiffs' counsel had not even drafted those portions of the [j]oint [r]eport at the time the [m]emorandum was filed. In sum, [the] [p]laintiffs' counsel's **misleading statement**[4] that progress on the [j]oint [r]eport had been made **does not**

---

[4] Words matter. With few exceptions, it is better for a Court to use clear and direct language in its opinions. There may be times when a written Order is best drafted with fuzzy language, but this Order is not one of them. As a legal umpire, I call balls and

13

>	**constitute good cause** for failing to submit it by the August 12, 2022, deadline. The [c]ourt cannot ensure the expeditious resolution of litigation, nor appropriately manage its docket, if counsel do not provide accurate information about compliance with the [c]ourt's orders.

(emphasis added).

Concerning potential prejudice to Plaintiff, his legal team can read Dr. Walker's trial and deposition transcripts to the jury, so this is not a situation where Plaintiff will be left without any testimony from the doctor at trial.[5] Moreover, this Order does not ban Plaintiff from arranging for Dr. Walker to appear at trial (by, for example, *persuading* him to do so in order to complete his role as a retained expert).

Thus, by way of summary, Plaintiff has not established good cause and excusable neglect. *Marquardt v. Ocean Reef Cmty. Assoc.*, No. 19-10110, 2021 WL 9599449, -- F. Supp. 3d -- (S.D. Fla. Apr. 8, 2021) (denying Plaintiff's motion to take deposition of non-party witness beyond the Court's subpoena power after discovery deadline expired). The Court

---

strikes. I do not call "non-strikes" and strikes. Thus, I adopt the *Baker* Court's use of the term "misleading" to describe certain aspects of the emergency motion because it applies. I could have used a watered-down approach and used an adjective such as "incomplete" or "skewed," but "misrepresentation" is more appropriate. "Disingenuous" would have worked, as well.

[5]  If Plaintiff presents Dr. Walker's trial testimony to the jury in the upcoming retrial, then the jury will be advised that "Dr. Walker has a scheduling conflict and is unable to appear in person at this trial, so his testimony in this case from before this trial with you began is being presented instead." If his trial testimony mentions anything indicating that his testimony was given in a *trial*, then the language will need to be redacted. Thus, to provide one illustration, if any attorney began a question with "tell the members of the jury why this medical condition exists," then the first part of the question will need to be removed.

therefore denies the emergency motion. *See Smith v. Royal Caribbean Cruises*, 302 F.R.D. 688, 689 (S.D. Fla. 2014) (citing *Chrysler Int'l*, explaining outdated notion of *de bene esse* depositions and holding that passenger was not entitled to obtain deposition testimony of two treating physicians as trial testimony after the discovery deadline expired).

**DONE AND ORDERED** in Chambers, in Miami, Florida, on October 25, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record